*485 OPINION OF THE COURT
Mark C. Dillon, J.
The plaintiffs in the above-captioned litigation seek damages from the defendants as a result of alleged medical malpractice. On May 13, 1993, the plaintiffs served upon the defendants various discovery demands including a demand for expert witness information pursuant to CPLR 3101 (d). The expert witness demand generally requested inter alia “the qualifications of such witness,” without specifically requesting more detailed information such as a list of all board certifications, States of licensure, residencies, internships, fellowships, the locations of hospital affiliations and other qualification-related information. The defendant, Dr. Peter C. Taylor Dickinson (Dickinson), served an expert witness response dated February 11, 1999, which omitted the expert’s name but disclosed his/her qualifications as being “licensed to practice medicine in New York State and board certified in neurosurgery,” and further, that the “expert is in private practice and affiliated with a teaching hospital in the New York metropolitan area.” By motion, the plaintiffs seek an order pursuant to CPLR 3126 and 3101 (d) precluding defendant Dickinson from introducing testimony of the expert, on the ground that the expert witness disclosure is deficient by not identifying the expert’s medical college, internship and residency. The plaintiffs argue that absent such “basic pedigree information,” they cannot properly prepare for trial and are otherwise prejudiced. The preclusion motion is opposed by defendant Dickinson.
The issue presented by the instant motion touches upon the extent of expert witness disclosure required in medical malpractice actions, which has been evolving for 15 years. CPLR 3101 (d) is part of a medical malpractice package enacted in 1985. The statute generally provides that upon request parties identify experts that are expected to be called at trial and disclose in reasonable detail the subject matter upon which they are expected to testify, the substance of the facts and opinions that shall be offered, the qualifications of the experts and a summary of the grounds for their opinions. (CPLR 3101 [d] [1] [i].) However, the same statute specifically provides that in actions for medical, dental or podiatric malpractice, “a party, in responding to a request [for expert witness information] may omit the names of the * * * experts, but shall be required to disclose all other information concerning * * * experts.” (CPLR 3101 [d] [1] [i].) A literal reading of the statute, therefore, would require parties in medical malpractice actions to dis *486 close the “qualifications” of every expert witness who is expected to be called at trial.
The purpose and intent of CPLR 3101 (d) (1) (i) was to expand disclosure with respect to experts and to foster settlements by discouraging parties from asserting unsupportable claims or defenses. (Mem of State Exec Dept in support of L 1985, ch 294, 1985 McKinney’s Session Laws of NY, at 3019, 3025.) Naturally, post-1985 case law was spawned throughout the State dealing with the contradiction inherent in CPLR 3101 (d) (1) (i), permitting a party to omit the specific name of an expert in a medical malpractice discovery response, while simultaneously requiring the disclosure of “qualifications” which could have the ultimate effect of revealing the expert’s identity. The contradiction inherent in the language of CPLR 3101 (d) (1) (i) does not speak to the original purpose and intent of the statute regarding a fostering of settlements and discouragement of unsupportable claims or defenses; rather, the contradiction involves a party’s legitimate need to receive expert witness information to prepare for trial on the one hand, and the disclosing party’s right to confidentiality regarding an expert’s identity (Carrasquillo v Rosencrans, 208 AD2d 488 [2d Dept 1994]; McCarty v Community Hosp., 203 AD2d 432, 433 [2d Dept 1994]) to protect such experts from direct or indirect pressure by other physicians from testifying against a colleague. (Rubenstein v Columbia Presbyt. Med. Ctr., 139 Misc 2d 349, 352 [Sup Ct, NY County 1988].)
The term “qualifications” is not defined by the CPLR. The term has been analogized to the evidentiary standards generally applicable to the admission of expert testimony at trial. (Pizzi v Muccia, 127 AD2d 338, 340-341 [3d Dept 1987]; Hamilton v Wein, 132 Misc 2d 1023, 1026 [Sup Ct, Kings County 1986].) Thus, the term “qualifications,” as used by the' statute, would appear to require disclosure of information with respect to the expert’s skill, training, education, knowledge or experience by which the expert’s opinion can be deemed sufficiently reliable and, hence, admissible at trial. (Matott v Ward, 48 NY2d 455, 459 [1979].)
The leading case rendered on this issue in the Second Department is Jasopersaud v Rho (169 AD2d 184 [2d Dept 1991]). The Second Department held that despite the plain language of CPLR 3101 (d) (1) (i) requiring disclosure of an expert’s “qualifications” in medical malpractice actions, the Legislature could not have intended to undermine the disclosing party’s right to omit the expert’s identity by requiring *487 excessively detailed information regarding the expert’s qualifications. (Jasopersaud v Rho, supra, at 188, citing Jones v Putnam Hosp. Ctr., 133 AD2d 447 [2d Dept 1987].) The Second Department further held that courts should undertake a balancing of the desirability of broad disclosure against the providing of information that would effectively reveal the expert’s identity. (Jasopersaud v Rho, supra, at 188.) The Second Department deemed, under the circumstances present then, that proper inquiries bearing upon an expert’s “qualifications” include the medical school attended by the expert, board certifications, areas of specialization, jurisdictions of licensure and the locations of internships, residencies and/or fellowships. (Jasopersaud v Rho, supra, at 188.)
The First Department has adopted a similar approach requiring the disclosure of so much of an expert’s qualifications as possible without revealing the identity of the expert. (Gonzalez v St. Clare’s Hosp. & Health Ctr., NYLJ, Jan. 19, 1999, at 29, col 5 [Sup Ct, NY County 1999, Schoenfeld, J.]; Yablon v Coburn, 219 AD2d 560, 561 [1st Dept 1995] [requiring disclosure of medical school, residency, fellowships and States of licensure].) The Third Department takes a somewhat different approach, placing upon the party that has retained the expert the burden of demonstrating that the disclosure of particular requested information regarding qualifications would have the net effect of revealing the expert’s identity, to be accomplished by means of seeking a protective order pursuant to CPLR 3103. (Pizzi v Muccia, supra, at 340.) More recently, the Fourth Department has permitted a scaled-back degree of disclosure, finding sufficient a summary of an expert’s qualifications that merely describes the expert therein as a board-certified physician with a specialty in pediatric infectious diseases and as a professor of that specialty within the State of New York. (McClain v Lockport Mem. Hosp., 236 AD2d 864 [4th Dept 1997].)
There have, of course, been significant advances in computer technology in recent years, by which even “bare bones” information regarding a medical expert’s medical training, the location of internships, residencies and fellowships, current hospital affiliations and professorships, and other qualification-related information can now be used to identify the individual whose name is not specifically disclosed in an expert witness response. (See, Dembin and Yun, Medical Expert Witness Disclosure Under CPLR: An Anachronism, NYLJ, Dec. 1, 1997, at 1, col 1.) In one fairly recent decision of the Supreme Court, *488 Bronx County, the method by which a computer search can be conducted to identify an expert was summarized; namely, selection of the GENMED Library from the LEXIS-NEXIS list, followed by choosing the ABMS Board Certified Physicians file, followed by choosing the Instruction file, followed by a search with particular words and phrases such as the State of licensure, board certification, medical school and internship. (Duran v New York City Health & Hosps. Corp., 182 Misc 2d 232, 234 [Sup Ct, Bronx County 1999].) These advances in computer technology now require an adjustment of the “balance” that was recognized and discussed by the Second Department in Jasopersaud (supra). Indeed, while Jasopersaud must be deemed controlling to this decision as it is the law of the Second Department, it has become stale case law with respect to the extent of information that must be disclosed by a party regarding an expert’s qualifications in light of the advance in technology since Jasopersaud was decided in 1991. It remains good case law with respect to the court’s obligation to engage in a “balance” for determining which qualifications of an expert be disclosed. The Fourth Department’s holding in McClain (supra), limiting disclosure obligations to an identified board-certified specialty and identification of a professorship, seems more balanced given today’s computer technology than does a broader disclosure approach.
The expert witness disclosure in this instance identifies defendant Dickinson’s expert as being a physician licensed to practice medicine in the State of New York, board certified in neurosurgery, with a private practice and an affiliation with a teaching hospital in the New York metropolitan area. The court is satisfied that if further information were provided at this juncture, including that specifically raised by the plaintiffs in their instant preclusion motion, a greater likelihood would then exist that the expert’s identity would be revealed. Accordingly, the court deems the defendant’s expert witness response to be satisfactory under CPLR 3101 (d) (1) (i) and its interpretive case law. The plaintiffs shall not, of course, be deprived of any qualification-related information for the defendant’s neurosurgeon at trial. Based on the foregoing, as well as the lack of any willful or intentional failure by the defendant to comply with discovery obligations (Aversa v Taubes, 194 AD2d 580, 582 [2d Dept 1993]), grounds for preclusion of expert testimony under CPLR 3126 have not been established.
The court has considered the remainder of the arguments set forth by the parties and deems them to be either without merit or mooted by this decision.
*489 In light of the foregoing, it is hereby ordered that the motion of the plaintiffs Marilyn Deitch and Joel Deitch to preclude the defendant, Dr. Peter C. Taylor Dickinson, from introducing expert witness testimony be and is hereby denied.