OPINION OF THE COURT
Richard A. Goldberg, J.
Defendant B.S. Nangia, M.D., a pediatric neurologist according to the court file, moves and defendant the Brooklyn Hospital Center, sued herein as both the Brooklyn Hospital Center — Downtown Campus and the Brooklyn Hospital Caledonian Hospital,[1] cross-moves, in this restored medical malpractice action,[2]
[3]to compel expert witness disclosure information* or, alternatively, to preclude plaintiff from offering any expert testimony at trial in view of plaintiff’s alleged failure to provide proper responses to moving defendants’ notices to produce such information.[4] Plaintiff concurrently claims that defendants have not served their expert witness information and thus purports to cross-move for the reciprocal relief of precluding defendants from producing experts to testify.[5]
This case concerns treatment occurring at the Brooklyn Hospital Center between September 16 and September 22, 1992 and the alleged failure to diagnose a benign brain tumor in then SVa-year-old plaintiff Sasha Talisa Esquilin who subsequently underwent brain surgery in 1994 which resulted *755 in the tumor’s removal. Each defendant concomitantly served a demand for expert witness information with its answer several years ago and now seeks the above relief.[6] Plaintiff’s response, dated September 10, 2001 and served October 5, 2001 after plaintiff’s counsel regained entry to their office following the World Trade Center catastrophe, states that his expert: “is a physician licensed to practice medicine in the State of New York. He [a footnote explains that ‘The expert may be female’] is board certified and specializes in the field of neurological surgery. He has academic affiliations and attending privileges at major area hospitals. He is a graduate of medical school and completed an internship and residency program. He has lectured, teaches, and is a member of several professional organizations and societies.”
Defendants’ motions, which originated before plaintiff had served her response and which the court now regards as addressing the presumptive inadequacy of that response, revisit the seemingly intractable issue concerning the extent of expert witness disclosure required in medical malpractice actions. CPLR 3101 (d) (1) (i) requires parties to disclose the qualifications of their experts yet allows the shielding of the expert’s identity. The provision, enacted as part of a legislative package to reform medical malpractice litigation (L 1985, ch 294, § 4), sought to foster settlements by discouraging parties “from asserting unsupportable claims or defenses * * * ” and thereby give parties “an accurate measure of the strength of their adversaries’ case.” (Mem of State Exec Dept in Support of L 1985, ch 294, 1985 McKinney’s Session Laws of NY, at 3019, 3025.)
The Appellate Division, Second Department, in Jasopersaud v Tao Gyoun Rho (169 AD2d 184, 187-188 [2d Dept 1991]) recognized the competing policy considerations that exist between a party’s legitimate need to prepare for trial by receiving expert witness information through broadened disclosure and the disclosing party’s right to maintain the confidentiality of an expert’s identity. The opinion noted the need to temper a liberal construction of the term “qualifications” in light of the perceived problem of peer pressure potentially discouraging *756 “exposed” experts from testifying against a colleague. The Jasopersaud decision therefore instructed trial courts to weigh the relevant policy interests involved. This directive meant balancing the Legislature’s intent to materially expand discovery regarding experts with its concern that requested information will effectively enable determining the expert’s identity. (Supra at 188.)
More specifically, the decision declared that: “the medical school attended by the plaintiffs expert, the expert’s board certifications, areas of special expertise, jurisdictions of licensure and the locations of internships, residencies and/or fellowships, are proper inquiries bearing upon the ‘qualifications’ of the expert.” {Id. [citations omitted].) The decision, though, still allowed concealing both the dates associated with these qualifications and the expert’s present hospital affiliations lest such information might reveal the expert’s identity. (Id.) The Appellate Division, First Department, cited Jasopersaud in Yablon v Coburn (219 AD2d 560 [1st Dept 1995]) and similarly required disclosure of the expert’s “medical school, residency and fellowships * * * and the States in which such witness is licensed to practice medicine.” The decision concluded that “The demands in dispute are proper inquiries bearing upon the qualifications of the expert, the need for which outweighs the unlikelihood that the information would allow identification of the expert’s name.” (Supra at 561.)
Plaintiff now seeks to revise the Jasopersaud decision to further limit disclosure to essentially only the licensing state and board certifications. Current computerized search engines utilizing the minimal amount of information that Jasopersaud authorizes can often apparently compromise or render futile protecting an expert’s identity. Hence, some coordinate lower court decisions recognize this technological phenomenon and regard Jasopersaud, decided a decade ago, as either anachronistic (Duran v New York City Health & Hosps. Corp., 182 Misc 2d 232 [Sup Ct, Bronx County 1999]), “stale case law” regarding the extent of disclosable information (Deitch v May, 185 Misc 2d 484, 488 [Sup Ct, Rockland County 2000]), or as tilting the balancing test to make its applicability either “inoperable,” “impossible,” or “improbable” (Engel v Defeo, 189 Misc 2d 673, 676 [Sup Ct, Nassau County 2001]). The late learned Justice John Leone in Brosnan v Shaffron (NYLJ, May 3, 2001, at 23, col 6 [Sup Ct, Richmond County]) viewed the controversy as a dilemma between following “the letter” or “the spirit” of Jasopersaud and chose, like the other cases above, to truncate, even further, disclosable information about expert qualifications.
*757 While Computer technology and accessible information has expanded greatly in the IOV2 years since Jasopersaud, so has the willingness and availability of medical “experts” to come forward and testify against the interests of their colleagues. The statutory provision, CPLR 3101 (d) (1) (i), which provides that a party may “omit” the identity of medical, dental or podiatric expert witnesses in malpractice cases was addressed to “the perceived problem of the exertion of direct or indirect pressure by some physicians to discourage their colleagues from giving expert testimony against them” (Rubenstein v Columbia Presbyt. Med. Ctr., 139 Misc 2d 349, 352 [Sup Ct, NY County 1988]; see, Siegel, NY Prac § 348A, at 504 [2d ed 1991]). The proliferation of medical, dental, and podiatric malpractice cases since 1985 with the concomitant availability of “experts” ready, willing, and able to testify, calls into question the validity of those concerns today. The technology and attitudes of the present era make the policy considerations that prompted the statute irreconcilable or irrelevant in today’s world. These are matters best addressed by the Legislature since it seems clear to this court that providing the information which one party seeks as essential to its ability to properly prepare for trial or move for summary judgment could lead to disclosure of the opposing expert’s name if one is prepared to engage in the necessary “detective” work.
This court, in any event, still regards Jasopersaud as prevailing and controlling authority which, even now, properly “harmonize[s] and effectuate[s] the objectives sought to be achieved by the competing provisions of [CPLR 3101 (d) (1) (i)].” (Supra, 169 AD2d at 188.) The statutory provision permitting a party not to disclose its expert’s name represents only one aspect of the statute. The extent of disclosable qualifications, laid out in Jasopersaud, which the Deitch decision described as “ “bare bones’ information” (supra, 185 Misc 2d at 487), preserves the Legislature’s at least equal interest of furnishing qualification information, as the statute says, “in reasonable detail.”[7] The Jasopersaud level of disclosure accommodates each side’s interests but more importantly fulfills both the aforementioned goal of better apprising parties of their *758 adversaries’ cases (which can result in better prepared cross-examinations) or the other salutary policy goal of encouraging equitable settlements.
Providing the qualification information authorized by Jasopersaud enables a party before trial to weigh an expert witness’ relative strength, assess the likelihood of winning or losing, and evaluate the worth of the case. Such evaluation truly promotes settlement and leaves appropriate cases for trial. Conversely, limiting expert disclosure information to the licensing state and board certifications offers an inadequate opportunity to evaluate the strength of the opposing party’s expert and thus contributes to maintaining cases on the trial calendar which might otherwise be reconciled, a result inconsistent with underlying policy objectives. Indeed, one very recent comprehensive analysis faults limited expert disclosure under CPLR 3101 (d) (1) as spawning “a flourishing procedural motion practice in medical malpractice litigation that encourages unfair surprise, squanders the resources of the parties and the court, and ultimately diverts cases from an orderly adjudication on their merits.” (Richard S. Basuk, Expert Witness Discovery for Medical Malpractice Cases in the Courts of New York: Is It Time To Take Off The Blindfolds?, 76 NYU L Rev 1527, 1542 [Nov. 2001].)
The court also recognizes that reasserting or tinkering with Jasopersaud remains the province of the Appellate Division, Second Department, just as reexamining CPLR 3101 (d) (1) (i), itself, remains for the Legislature. Consequently, both judicial and legislative constraints as well as sound public policy considerations permit resourceful counsel to receive and utilize the limited disclosure information detailed in the Jasopersaud decision. Accordingly, it is ordered that the short form order dated June 8, 2001 which directed the filing of a note of issue and decreed that “Any discovery not complied with is waived” is limited to discovery sought by plaintiff; and it is further ordered that defendants’ motions to compel expert witness disclosure information are granted to the extent that plaintiff shall supplement its response to specify the medical school attended by her expert, the boards which have certified her expert, and the locations of her expert’s internships, residencies, and/or fellowships; and it is further ordered that plaintiff is precluded from offering any expert testimony at trial should she fail to comply with this order; and it is further ordered that plaintiffs purported cross motion is denied with leave to *759 renew if plaintiff can demonstrate a timely demand for expert witness information.

. Correspondence dated January 2, 2002 from counsel for defendant Brooklyn Hospital Center clarifies the proper designation as indicated above.

. An order of the Honorable William T. Bellard, now retired, dated May 5, 1999, restored this action.

. A preliminary conference order, dated April 29, 1996, provided that: “All parties to exchange name[s] and addresses of all witnesses, opposing parties!’] statements and photographs.” However, the court regards this directive as inapplicable to expert witnesses. (Siegel, NY Prac § 349, at 540 [3d ed 1999].)

. An order of the court, dated November 13, 2001, granted an unopposed summary judgment motion and dismissed the complaint against defendants Rakesh K. Mittal, M.D. and Daniel Tay, M.D.

. However, plaintiff has failed to comply with the requirement in CPLR 2215 to serve a notice of cross motion requesting the affirmative relief above. The court can excuse such failure where no prejudice exists as may emerge from reviewing all submitted papers. Here, plaintiff designates the affirmation in opposition as also in support of the cross motion and references her cross motion for reciprocal relief on page 2 of her counsel’s opposing affirmation.
Nonetheless, the court also recognizes that plaintiff failed to demonstrate service of a demand for expert witness information. Consequently, the court cannot properly entertain plaintiff’s purported cross motion at this time but grants leave to renew if plaintiff can demonstrate a timely demand for such expert witness information.

. A short form order dated June 8, 2001, principally directing plaintiff to file a note of issue by June 15, 2001 with which she complied on June 14, 2001, also decreed that “Any discovery not complied with is waived.” Consequently, the court treats defendants’ motions as initially seeking either reconsideration of that directive or its limitation to discovery sought by plaintiff and chooses the latter.

. Indeed, the actual language in CPLR 3101 (d) (1) (i) further stresses the importance placed on qualification information. The statute’s use of the word “shall” to describe a party’s disclosure obligation regarding qualifications as contrasted with the use of the word “may” regarding a disclosing party’s preference to withhold naming the expert suggests a strong legislative commitment to ensuring appropriate expert disclosure.