OPINION OF THE COURT
Stanley Green, J.
In this medical malpractice action, plaintiff moves for a *233 protective order with respect to defendants’ CPLR 3101 (d) demands.
Defendants served demands for discovery of expert witnesses pursuant to CPLR 3101 (d). The demands included the areas of expertise; the name and address of the medical school and date of graduation; each hospital at which each expert served an internship, residency or fellowship, including the specialty and dates; each hospital to which the expert had admitting privileges; the States in which the expert is licensed and currently practicing; the societies each expert belongs to; the board certifications of each expert; and faculty positions of each expert.
Plaintiff contends that if she provides this information, defendants, through the use of LEXIS-NEXIS, will be able to easily determine the identity of the expert. Defendants do not dispute this, but contend that plaintiff is required to provide this information nonetheless.
CPLR 3101 (d) provides that each party must disclose the qualifications of each expert witness, but in a medical malpractice action, a party may omit the names of the experts. “This exception was addressed to ‘the perceived problem of the exertion of direct or indirect pressure by some physicians to discourage their colleagues from giving expert testimony against them’.” (Jasopersaud v Tao Gyoun Rho, 169 AD2d 184, 187, quoting Rubenstein v Columbia Presbyt. Med. Ctr., 139 Misc 2d 349, 352.) In Jasopersaud, the Second Department found that defendants’ request for the medical school attended by the plaintiff’s expert, the expert’s board certifications, areas of special expertise, jurisdictions of licensure and the locations of internships, residencies and/or fellowships were proper inquiries bearing on the “qualifications” of the expert. (169 AD2d, supra, at 188.) The Court declined to order plaintiff to provide the dates associated with these qualifications, “however, since we are of the view that under the circumstances, the disclosure of such information would tend to reveal the identify of the plaintiff’s expert.” (Supra, at 188.) Clearly, the Court fashioned a compromise based upon its belief that the defendant could not ascertain the identity of the plaintiff’s expert based on the information provided.
In Yablon v Coburn (219 AD2d 560, 561), the First Department, citing Jasopersaud (supra), directed plaintiff to disclose the medical school, residency and fellowships of plaintiff’s expert and the States in which the expert was licensed. The Court found that “The demands in dispute are proper inquiries *234 bearing upon the qualifications of the expert, the need for which outweighs the unlikelihood that the information would allow identification of the expert’s name” (219 AD2d, at 561; emphasis added). Here, the Court, by its use of the word “unlikelihood,” indicated that it based its opinion on its belief that the information provided would not lead to disclosure of the expert’s identity.
In Pizzi v Muccia (127 AD2d 338, 340), the Third Department, while denying plaintiffs request for a protective order, determined that “in an appropriate case, a court could strike a request for qualifications when it is demonstrated that the expert’s identity would thereby be revealed.”
In the instant case, plaintiff presented an example of how one could easily identify an expert by using the information provided in an expert response pursuant to Jasopersaud (supra).The search is conducted as follows: First one would select the GENMED library from the list provided by TEXTS - NEXIS. Next, one would choose the file entitled ABMS Board Certified Physicians. From the ABMS file one would pick instruction <=1> to conduct a full text search. Finally, by searching with particular words and phrases, such as the State of licensure, board certification, medical school and internship, one can find the identity of a doctor. Using this method, plaintiff demonstrated how that particular expert was easily identified. However, plaintiff found that the only search that did not enable her to narrow down the possibilities in order to identify the physician was a search using only the location of licensure and board certification.
Thus, the granting of a protective order would be consistent with the intent of the statute as enunciated in Jasopersaud (supra) and with the holdings of Jasopersaud, Yablon (supra) and Pizzi (supra). The computer printouts submitted by plaintiff, both those annexed to the moving papers and those submitted in camera to the court regarding plaintiffs expert, support plaintiffs position. Defendants’ reliance on Jasoper-saud is thus misplaced, considering the current state of the Internet and the resources available to counsel.
Accordingly, plaintiffs motion for a protective order is granted to the extent that plaintiff is required to provide only the expert’s State of licensure and board certification.