OPINION OF THE COURT
Stephen A. Bucaria, J.
This motion, by defendant Goldstein, for an order: (a) precluding plaintiff from adducing expert testimony by the *674 proposed orthopedic surgeon; (b) staying the trial of this action pending plaintiffs proper compliance with CPLR 3101 (d) (1) (i); and (c) for such other, further and different relief as this court deems just and proper, is determined as hereinafter set forth.
In this action to recover damages for alleged medical malpractice by the defendant Goldstein, the matter has been on the trial calendar since October 4, 2000. This defendant made his CPLR 3101 (d) (1) (i) demand on February 22, 1999 and the plaintiffs’ attorney responded on May 12, 2000. The instant application was made by notice of motion, on August 16, 2001, after five adjournments of the trial. No application for temporary relief for a stay has been made (although one part of the relief sought is a stay of the trial), with the potential for the matter to be trial ready and the instant issue to be raised in limine, on the scheduled trial date of September 28, 2001.
With that procedural backdrop, this court examines the parties’ respective positions.
The defendant’s counsel relies upon the prevailing case law in the Second Department, Jasopersaud v Rho (169 AD2d 184 [2d Dept 1991]), which he interprets to mandate fuller disclosure of the identity of the plaintiffs expert’s educational and professional background. The defendant’s counsel argues the inappropriate approach of the case law in the Third and Fourth Departments of the Appellate Division and unchanged applicability of this Department’s interpretation of CPLR 3101 (d) (1) (i).
The plaintiff’s opposition (revealed and discussed in large part in defendant’s moving affirmation) asserts that case law in the First, Third and Fourth Departments recognizes the existence of computer resources available for use to medical malpractice litigators to identify a plaintiff’s medical expert. He also asserts that such identification is protected by statute. He argues, as well, that the defendant’s delay of 15 months, 10 months of which was while the action was on the trial calendar, should require this motion to be ruled upon by the trial judge and denied because of the delay alone. He also makes note of his offer to provide all the disclosure demanded by the defendant if counsel for the defendant “agrees to sign an affidavit stating that he and his representatives will not use this information in order to obtain the name of the physician.”
*675 The clear directive of the Appellate Division, Second Department, in Jasopersaud v Rho (supra at 188) lies in the following language:
“While each case will necessarily vary upon the particular circumstances involved and the nature of the demands made, a Trial Judge assessing the propriety of a request for expert witness information must weigh the relevant policy interests involved, i.e., the Legislature’s intent to materially expand discovery relating to experts and the competing concern reflected by the statutory provision authorizing a party to refrain from disclosing an expert’s identity.”
Both the language of the statute, CPLR 3101 (d) (1) (i), and all the attendant case law makes it clear that the Legislature had two purposes: to provide the parties in a medical malpractice action with notice, prior to trial, that is sufficient to enable them to properly prepare for trial and to protect the plaintiffs expert from identification. If the plaintiffs attorney so chooses, he may reveal that identity, but he is empowered to “omit the names of medical, dental or podiatric experts” (CPLR 3101 [d] [1] [i]; emphasis supplied).
Historically, the general statutory and case law in this State has been to broaden disclosure. In fact, the Appellate Division, Second Department, in Jasopersaud acknowledged that the 1985 amendment adding CPLR 3101 (d) (1) (i) in part reflected the Legislature’s view that expanded disclosure with respect to expert witnesses would, among other things, discourage parties “from asserting unsupportable claims or defenses” and promote “settlement by providing both parties an accurate measure of their adversaries’ case” (Mem of State Exec Dept in Support of L 1985, ch 294, 1985 McKinney’s Session Laws of NY, at 3019, 3025). As aforestated, the statute also specifically provides that a party in a medical malpractice may “omit” the identity of expert witnesses.
The Jasopersaud Court, in fashioning its determination, introduced a balancing test, to wit: “the desirability of broad disclosure must be balanced against the concern that the information requested will ‘effectively lead to the disclosure of the expert’s identity’ ” (Jasopersaud v Rho, supra at 188, quoting Jones v Putnam Hosp. Ctr., 133 AD2d 447). A necessary foundation to this defendant’s request for further disclosure is the need for such information. While counsel for the defendant has stated that the information sought has not been provided, *676 no reason for such need has been stated, nor has any prejudice that he may suffer been alleged.
This court is constrained, by the clear and precise language of the statute, to acknowledge that the plaintiff may “omit” the identity of her medical expert. Accordingly, the propriety of utilizing the Jasopersaud balancing test is clear.
Jasopersaud’s message is not limited to a list of the proper items requested in the demand for that plaintiff’s expert information but a signpost that the discovery purposes and objectives in the statute must be balanced against the plaintiffs statutory right to nondisclosure of her expert’s identity. In today’s context, 10 years after Jasopersaud, computer technology and expertise has outstripped the plaintiffs attorney’s ability to conceal his expert’s identity, and for this court to blindly apply the directive in that case of Jasopersaud, i.e., to provide “the medical school attended by the plaintiffs expert, the expert’s board certifications, areas of special expertise, jurisdictions of licensure and the locations of internships, residences and/or fellowships” (supra at 188), without an agreement not to ascertain the expert’s identity, would fly in the face of the statutory mandate that the plaintiff can omit and withhold her expert’s identity.
While Jasopersaud (supra) has set up a viable balancing test to be used in determining this issue of expert disclosure, technology has rendered the fulcrum of that balance inoperable. Clearly, given the information that the relevant statutory and case law permits, current computer programs render the protection of the expert’s identity impossible. It is not this court’s province, nor is it the intent of this determination, to attack or declare CPLR 3101 (d) (1) (i) invalid. It must be left to the New York State Legislature to revisit said statute, inasmuch as technology has made the present applicability of Jasopersaud impossible, or at least improbable.
There is no dispute herein of the effectiveness of the modem computerized search engines which, when provided a minimal amount of information on a particular expert, can efficiently negate the statutory omission provided.
The delay by the defendant in making this motion is significant, as well, in that the information sought herein was not deemed sufficiently important until 15 months after the plaintiffs response, when this motion was made on the eve of trial, when defendant’s counsel had not yet ascertained the identity of the plaintiffs expert witness.
This court cannot ignore the fact that counsel for the defendant has made this motion a fall 10 months after the note of *677 issue was filed (which filing was made 5 months after plaintiffs response), after 5 adjournments of the trial. Although CPLR 3101 (d) (1) (i) does not specifically mandate a temporal limitation, perhaps such may also be legislatively addressed.
Accordingly, to mandate herein such disclosure, especially under the peculiar time situation at bar, is contraindicated, and the defendant’s motion is denied in its entirety.