OPINION OF THE COURT
Peter C. Patsalos, J.
Defendants David J. McConnell, Clara Chudow, Stanley Hoff and Orange Radiological Imaging move and defendants St. Anthony Community Hospital, Franciscan Health System TriState Region, Inc., Bon Secours Charity Health System, Inc., and Bon Secours New York Health System, Inc. cross-move for an order compelling further disclosure in this action to recover damages for alleged medical malpractice.
By short form order dated March 27, 2002, the undersigned directed plaintiff’s counsel to provide the tax returns for calendar years 1996-1998 to defendants’ attorneys. Plaintiff provided the 1040 forms only without W-2 forms or schedules to the 1040 and did not produce state income tax returns at all. Plaintiff has now provided W-2 forms for his decedent for the years at issue. However, plaintiff is still not in compliance with the court’s order and will be directed to produce the entire tax returns, federal and state, for the years in question.
The court now turns to the principal issue on these motions which is whether the Appellate Division, Second Department’s holding in Thomas v Alleyne (302 AD2d 36 [2d Dept 2002]) should apply to this case.
In Thomas (id.) the Appellate Division, Second Department, abrogated its holding in Jasopersaud v Rho (169 AD2d 184 [1991]) which had interpreted CPLR 3101 (d) (1) (i) as limiting the scope of expert witness disclosure in medical malpractice actions to preclude not only disclosure of the witness’ name but also of the witness’ qualifications which could tend to lead to disclosure of the witness’ identity. Thus, in Jasopersaud (supra) the Court held that disclosure only need be provided as to the medical school the expert attended, the expert’s board certifications, areas of special expertise, jurisdictions of licensure and the locations of internships, residencies and/or fellowships but not the associated dates (supra at 188).
In Thomas (supra), the Appellate Division revisited its decision in Jasopersaud (supra) inasmuch as technological advances made since the year of that decision, 1991, had enabled attorneys and their employees to readily identify experts with the information permitted in Jasopersaud. The Court decided not to limit disclosure even further, as the plaintiff in that case *422 had requested, but to abandon the policy, insofar as the statute permitted, of trying to conceal the expert witness’ identity. The Court noted that New York is the only American jurisdiction which prohibits pretrial disclosure of the name of an expert witness in medical malpractice actions. The Court further noted that the concern used to support the statutory permission to refuse to disclose the expert witness’ name was that medical experts might be discouraged by their colleagues from testifying, a concern which the Court appeared to find dubious (302 AD2d, supra at 44). Accordingly, defendants are now entitled to disclosure of the qualifications of an expert witness subject to a plaintiffs moving for a protective order should a potential witness feel vulnerable to threats or intimidation. The Thomas Court declined, however, to state whether its holding would be applied retroactively, stating, “we acknowledge that our departure from our precedent in Jasopersaud might be viewed by some as ‘a sharp break in the web of the law’ ” (302 AD2d, supra at 46, quoting James v Liberty Lines, 97 AD2d 749 [1983]).
With that background the court turns to the case at bar.
This is a medical malpractice action in which the underlying claim is that defendants failed to diagnose and treat, among other things, plaintiffs decedent’s perforated colon and bowel, resulting in septic shock, peritonitis and death. Plaintiff provided expert witness disclosure on December 16, 2002 (the day Thomas, supra, was decided). The information provided is limited as permitted by Jasopersaud (supra). Plaintiff provided the following qualifications:
“A Board-certified General Surgeon, licensed in the State of New York, who is a graduate of the State University of New York-Downstate College of Medicine, Brooklyn, New York and who performed an internship at Mt. Sinai Medical Center, New York, N.Y., with a residency in general surgery at Mt. Sinai Medical Center. The expert is Board-certified by The American Board of Surgery, and is in private practice in the fields of General Surgery and Colon Rectal Surgery with privileges at major New York medical institutions. The Expert is also an Associate Clinical Professor at a major medical institution.”
Defendants now move to compel further disclosure. Inasmuch as defendants originally demanded information outside the scope of that permitted by Jasopersaud (supra) the court reaches the merits of the issue presented.
*423 Generally, following traditional common-law methodology, changes in decisional law are applied to all cases still in the normal litigating process (see Gurnee v Aetna Life & Cas. Co., 55 NY2d 184 [1982]; James v Liberty Lines, 97 AD2d 749 [1983]). Where there has been such a sharp break in the law that its impact will “wreak more havoc in society than society’s interest in stability will tolerate” a court may direct that the change in law be applied only prospectively (see Gurnee v Aetna Life & Cas. Co., supra at 191 [internal quotation marks omitted], quoting Gager v White, 53 NY2d 475, 483-484 [1981]; see also, People v Favor, 82 NY2d 254 [1993]). When confronted with the issue of whether a change in law should be applied retroactively, courts should consider (1) the purpose of the new rule, (2) the extent of reliance on the old rule, and (3) the effect on the administration of justice of retroactive application (see People v Mitchell, 80 NY2d 519 [1992]). For example, in Busa v Busa (196 AD2d 267 [1994]) the Appellate Division, Third Department, declined to apply retroactively its holding that a judgment of divorce is ineffective to dissolve a marriage if it makes no equitable distribution of marital property. The Busa Court found that to destabilize divorce judgments which had long been considered final would wreak havoc on society. By contrast, in People v Favor (supra), the Court of Appeals applied a rule which found error if a criminal defendant was not present at a pretrial hearing pursuant to People v Sandoval (34 NY2d 371 [1974]) retroactively. The Favor Court reasoned, among other things, that the number of cases to which its holding would be applicable would not have a serious effect on the administration of justice in the state.
Turning to the issue at hand, the court begins with the observation that the purpose of Jasopersaud (supra) was never to impede medical malpractice defendants in preparing for trial by preventing them from gathering materials to impeach an expert witness’ testimony. To the extent the rule had a legitimate purpose, i.e., to protect those in the medical community willing to testify on behalf of plaintiffs, the Thomas Court provides a remedy, namely, an application for a protective order. Plaintiff in this case makes no such application. The holding in Thomas (supra) is consistent with and advances the fundamental policy of article 31 of the CPLR to provide liberal disclosure (see Falk v Inzinna, 299 AD2d 120 [2d Dept 2002]; CPLR 3101 [a]). Any recent reliance by the medical malpractice bar either legally or strategically upon the Jasopersaud holding (supra) would appear to be misplaced. The ineffective *424 ness of the holding in protecting the prospective witness’ identity had been acknowledged by the trial courts before the Appellate Division, Second Department, decided Thomas v Alleyne (supra; see Esquilin v Brooklyn Hosp. Ctr.-Downtown Campus, 190 Misc 2d 753 [2002]; Engel v Defeo, 189 Misc 2d 673 [2001]). Finally, the court turns to the third prong of the test, i.e., the effect that retroactive application would have upon the administration of justice in the state. Plaintiff argues in this regard that motions to compel further disclosure and motions for protective orders will burden the trial courts. He contends “[t]he motion practice will further burden already burdened trial parts or cause the [trial] ready cases to be returned to the individual assignment parts to determine whether the expert in each of these thousands of cases will be subject to retaliation or humiliation as to render a protective order necessary” (affirmation of Gerard K. Ryan, Jr., Esq., dated Jan. 22, 2003, at 3). The court is not persuaded by this apocalyptic vision. As previously noted, the plaintiff’s expert in this case apparently fears no humiliation; no motion for a protective order has been made. Moreover, if experts who have been willing to testify for plaintiffs in medical malpractice actions have been treated as pariahs by their colleagues it does not seem to have impeded the commencement of medical malpractice actions. If it becomes clear that Thomas v Alleyne (supra) is to be applied to cases currently in the litigation process the information can be exchanged voluntarily; an application for a protective order would appear to be an exception, not the rule. Of course, such matters are the province of administrative judges in the counties which follow the dual track system (which this county does not), but the undersigned sees no reason why a return of a case to the Individual Assignment Part would be necessary. In counties which contain dedicated Medical Malpractice Trial Parts the trial judge would be as well, if not better, equipped to adjudicate such issues.