Kanaly v DeMartino (2018 NY Slip Op 04060)





Kanaly v DeMartino


2018 NY Slip Op 04060


Decided on June 7, 2018


Appellate Division, Third Department


McCarthy, J.P., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 7, 2018

525459

[*1]DIANNE KANALY, Individually and as Administrator of the Estate of MARY BRONWEN OWENS, Deceased, Appellant,
v
WENDY ANNE DeMARTINO et al., Respondents.

Calendar Date: April 27, 2018

Before: McCarthy, J.P., Egan Jr., Devine, Mulvey and Rumsey, JJ.


LaFave, Wein & Frament, PLLC, Guilderland (Jason A. Frament of counsel), for appellant.
Phelan, Phelan & Danek, LLC, Albany (Timothy S. Brennan of counsel), for Wendy Anne DeMartino, respondent.
O'Connor, O'Connor Bresee & First, PC, Albany (Anne M. Hurley of counsel), for John Krisa and others, respondents.
Thorn Gershon Tyman & Bonanni, LLP, Albany (Marshall Broad of counsel), for Albany Memorial Hospital and another, respondents.


McCarthy, J.P.

Appeal from an order of the Supreme Court (Chauvin, J.), entered July 20, 2017 in Saratoga County, which, among other things, partially granted defendants' motions for additional disclosure.
Plaintiff commenced this medical malpractice action against defendants in March 2013 alleging that they caused the death of Mary Bronwen Owens (hereinafter decedent) by improperly prescribing her a strong narcotic, fentanyl, when she was opiate naive, or lacked tolerance to opiates. Defendants answered and served plaintiff with, among other things, demands for disclosure related to expert witnesses and authorizations to obtain decedent's medical records. Despite defendants' objections, plaintiff limited the authorizations to permit disclosure of decedent's medical records for only the two-year period prior to her death. Plaintiff also provided a combined expert witness disclosure to all defendants. Defendants moved to compel plaintiff to provide unrestricted medical authorizations and to supplement and amend her expert witness disclosure. Plaintiff cross-moved for a protective order.
Supreme Court denied plaintiff's cross motion and granted defendants' motions to the extent of ordering plaintiff to provide specified information about her expert witnesses and to supplement her disclosure to include "anticipated opinions concerning the specific manner, as applicable to each individual defendant, in which each said defendant deviated from the requisite standard of practice." The court also ordered plaintiff to provide medical authorizations dating back 10 years from decedent's death. Plaintiff appeals.
To the extent that plaintiff argues that Supreme Court's order was improper because defendants did not establish their entitlement to post-note of issue discovery (see Tirado v Miller, 75 AD3d 153, 157 [2010]; 22 NYCRR 202.21 [d]), the parties' disputes over the scope of the medical authorizations were ongoing and began long before the note of issue was filed; these were not new discovery requests. Moreover, plaintiff's expert disclosure was not filed until more than a year after the note of issue was filed, so any disagreement about the scope of that disclosure, or request for additional information about the experts, could not have been addressed pre-note of issue. In any event, Supreme Court had broad discretion to "permit post-note of issue discovery without vacating the note of issue," as no party was prejudiced (Cabrera v Abaev, 150 AD3d 588, 588 [2017]).
Supreme Court did not abuse its discretion in ordering plaintiff to provide unrestricted authorizations for defendants to obtain decedent's medical records for 10 years preceding her death. "[A] litigant is deemed to have waived the physician-patient privilege when, in bringing or defending a personal injury action, that person has affirmatively placed his or her mental or physical condition in issue" (Arons v Jutkowitz, 9 NY3d 393, 409 [2007] [internal quotations marks, brackets and citations omitted]). Plaintiff alleged that defendants committed medical malpractice by prescribing decedent fentanyl when she was opiate naive. The parties dispute the definition of that term, with a possible definition espoused by one of the defense experts requiring knowledge of the patient's medical history for at least a 10-year period prior to death. Defendants have noted that decedent suffered for many years from medical conditions for which pain medication would typically be prescribed. One medical record reveals that decedent received fentanyl — the drug alleged to have caused her death — for a surgical procedure in 2005. Additionally, plaintiff alleged that defendant Wendy Anne DeMartino was negligent for failing to read and use decedent's full medical history, and plaintiff's expert witness disclosure suggested that plaintiff's experts would rely on and testify to decedent's full medical history, but the disclosure did not delineate the extent or time period of that history. Inasmuch as plaintiff placed at issue decedent's full medical history for an extended but unspecified period of time, Supreme Court did not abuse its discretion in ordering plaintiff to provide medical authorizations for a 10-year period (see Reyes v Lexington 79th Corp, 149 AD3d 508, 508-509 [2017]; Farrell v E.W. Howell Co., LLC, 103 AD3d 772, 773 [2013]; Chervin v Macura, 28 AD3d 600, 601 [2006]; Caplow v Otis El. Co., 176 AD2d 199, 200 [1991]).
Plaintiff's remaining arguments pertain to the scope of disclosure ordered by Supreme Court. Trial courts are vested with broad discretion when addressing issues surrounding expert disclosure (see Colucci v Stuyvesant Plaza, Inc., 157 AD3d 1095, 1098 [2018], lv denied ___ NY3d ___ [May 3, 2018]; Mary Imogene Bassett Hosp. v Cannon Design, Inc., 97 AD3d 1030, 1031 [2012]; Mead v Dr. Rajadhyax' Dental Group, 34 AD3d 1139, 1140 [2006]). Pursuant to statute, a party responding to a demand for information about expert witnesses "shall identify each person whom the party expects to call as an expert witness at trial and shall disclose in reasonable detail the subject matter on which each expert is expected to testify, the substance of the facts and opinions on which each expert is expected to testify, the qualifications of each expert witness and a summary of the grounds for each expert's opinion" (CPLR 3101 [d] [1] [i]). An exception in the same paragraph provides that, "[i]n an action for medical . . . malpractice, a [*2]party, in responding to a request, may omit the names of medical . . . experts but shall be required to disclose all other information concerning such experts otherwise required by this paragraph" (CPLR 3101 [d] [1] [i]). Defendants' motions challenged plaintiff's expert disclosure in two main ways: (1) the disclosure did not include reasonable detail as to the subject matter and substance of the facts and opinions of each expert because the disclosure was essentially identical for each expert and as to each defendant, and (2) the disclosure did not provide reasonable detail as to the qualifications of four of plaintiff's experts.
Supreme Court did not abuse its discretion in ordering plaintiff to supplement her disclosure by making it specific to each defendant. Plaintiff contends that defendants were foreclosed from raising this argument because the court had previously decided that the allegations in her second supplemental bill of particulars were adequate. She apparently copied those allegations directly into her expert disclosure. The court's prior decision was not dispositive, however, because a bill of particulars serves a different purpose than an expert witness disclosure.
In any event, plaintiff's "undifferentiated aggregation of the claimed negligent acts and omissions of all defendants" did not serve the purpose of either a bill of particulars or an expert disclosure (McLaughlin v Charles, 91 AD2d 1119, 1119 [1983]). Plaintiff's expert disclosure did not serve its purpose or comply with the statute because it did not contain reasonable detail concerning each expert's opinion, considering that the disclosure essentially alleged the same acts of negligence as to each defendant, even though some of those allegations could not possibly apply to every defendant. The nature of the disclosure here "essentially tell[s] the defendants nothing about what they are supposed to be defending" (Carter v Isabella Geriatric Ctr., Inc., 71 AD3d 443, 444 [2010] [internal quotation marks and citation omitted]). It is unfair to require one defendant to prepare to defend against allegations that plaintiff only intends to assert against the codefendants. Instead of a blended aggregation of claims, as plaintiff provided, each defendant was entitled to a disclosure specific to him, her or it (cf. Neissel v Rensselaer Polytechnic Inst., 30 AD3d 881, 882 [2006]; McLaughlin v Charles, 91 AD2d at 1119; Brynes v New York Hosp., 91 AD2d 907, 907 [1983]). Thus, Supreme Court did not abuse its discretion by requiring plaintiff to revise her expert disclosure to differentiate and specify which allegations of negligence apply to each defendant, and to delete any alleged act of negligence that is not applicable to any particular defendant.
The portion of Supreme Court's order requiring plaintiff to provide more information regarding her experts' qualifications, however, is not consistent with this Court's current standard for expert disclosure. The term "qualifications" in CPLR 3101 (d) (1) is not defined but, based on the standard for deeming an expert qualified to testify, "it is apparent that defendant[s are] entitled to disclosure of requested items which bear upon the skill, training, education, knowledge and experience of plaintiff['s] experts" (Pizzi v Muccia, 127 AD2d 338, 340 [1987]). Although the Appellate Division Departments have applied somewhat different standards regarding the scope of required expert disclosure, this Court has held that, "[w]ith the exception of [experts'] names, virtually all information regarding expert witnesses and their anticipated testimony is discoverable under CPLR 3101 (d) (1) (i), unless 'the request is so detailed that disclosure would have the net effect of disclosing the experts' identities'" (Morris v Clements, 228 AD2d 990, 991 [1996], quoting Pizzi v Muccia, 127 AD2d at 340; see Mead v Dr. Rajadhyax' Dental Group, 34 AD3d at 1140; compare Thomas v Alleyne, 302 AD2d 36, 37-38 [2d Dept 2002]; Thompson v Swiantek, 291 AD2d 884, 885 [4th Dept 2002]). The party seeking a protective order preventing or limiting such disclosure bears the burden of showing how the requested information would reveal the identity of an expert (see Pizzi v Muccia, 127 AD2d at 340; see also CPLR 3103 [a]; Morris v Clements, 228 AD2d at 991).
In response to defendants' detailed demands for expert qualifications, plaintiff specifically disclosed each expert's area of medical specialty, board certification and state of licensure. Regarding the experts' education, training and work experience, plaintiff did not include the names of any institutions where the experts studied or worked and limited the locations to geographic regions, such as the northeast or midwest. The disclosure made only general statements about the experts being or having been involved in research programs, professional organizations and publications. No dates were supplied for any items, despite having been requested.
To justify the limited disclosure, plaintiff submitted in camera materials explaining how an advanced software program available to attorneys can be used to correctly identify experts with only a few pieces of data. An attorney affirmation described how searches conducted with extremely limited information accurately identified plaintiff's experts. For example, counsel ran a search for one expert using information that had already been disclosed to defendants (the expert was licensed in Georgia and board certified in emergency medicine) and received 1,283 possible experts. A new search including only a limited amount of the information demanded by defendants (the expert's subcertification and the years he or she attended medical school) ended with only one result — plaintiff's expert. To provide the court with numerous examples, counsel ran searches with different categories of information for each of plaintiff's experts. Printouts of those searches were attached. Applying our current rule, plaintiff met her burden of showing that the demanded information would reveal her experts' identities, so she would be entitled to a protective order preventing disclosure of that information (see Pizzi v Muccia, 127 AD2d at 340; see also CPLR 3103 [a]; Morris v Clements, 228 AD2d at 991).
Arguing that this Court should reevaluate its standard for expert witness disclosure in medical malpractice actions, defendants contend that certain requested information — including names of educational institutions, location of residencies and internships, areas of prior practice and dates of graduation, licensure and board certification — is relevant to an expert's skill, training, education and experience and is necessary to prepare for trial. Due to evolving technology, including broad access to the Internet, the task of identifying an expert has been "vastly simplified" and, conversely, keeping an expert's identity anonymous has become increasingly difficult (Thomas v Alleyne, 302 AD2d at 43). Supreme Court tried to strike a balance by ordering plaintiff to disclose more information than she originally provided but less information than was demanded by defendants. The court directed plaintiff to provide the following information about each of her undisclosed experts: location, by state, of any colleges and medical schools attended, internships, residencies and subsequent employment; the nature of such employment in relation to his or her field of specialty; location, by state, of any current license and any current board certifications; and dates associated with his or her school attendance, employment and initial board certifications. As an example, under this order plaintiff need not identify the name of an expert's medical school, but must list the state in which the school is located and when the expert attended. The court's order also directed defendants that, if they did identify any of plaintiff's experts, they could not contact, importune or otherwise bother those experts (see CPLR 3103 [a]). While it appears that Supreme Court attempted to reach a reasonable compromise, considering the parties' competing interests, that approach does not comport with this Court's standard for expert disclosure because plaintiff demonstrated that her experts could be identified using the demanded information (see Morris v Clements, 228 AD2d at 991; Pizzi v Muccia, 127 AD2d at 340).
Hence, we are presented with the opportunity to reassess our current standard. As noted above, the statutory language at issue, which was adopted in 1985 (L 1985, ch 294, § 4), provides that each party "shall identify" the people it intends to call as expert witnesses at trial and "shall [*3]disclose in reasonable detail . . . the qualifications of each expert witness" (CPLR 3101 [d] [1] [i]). The use of the verb "shall" indicates the mandatory nature of the obligations (see Thomas v Alleyne, 302 AD2d at 40). The statute creates an exception permitting, but not requiring, the omission of the expert's name in medical, dental and podiatric malpractice cases (see CPLR 3101 [d] [1] [i]). "The statute sets forth no exception to the requirement that, upon demand, the qualifications of the parties' experts be set forth in 'reasonable detail'" (Thomas v Alleyne, 302 AD2d at 40). Indeed, the statute states that a party "shall be required to disclose all other information concerning such experts" that is otherwise required by the statute (CPLR 3101 [d] [1] [i]). As the Second Department has recognized, "the statute, read literally, requires that the qualifications of each party's expert witnesses be set forth in 'reasonable detail' in all cases, without exception," and any rule permitting further limitations to expert disclosure in medical malpractice actions was created by case law (Thomas v Alleyne, 302 AD2d at 40).
Some of that case law allowed a party to withhold disclosure where the demanded information would effectively reveal the expert's identity (see e.g. Thompson v Swiantek, 291 AD2d at 884-885; Morris v Clements, 228 AD2d at 991; Jasopersaud v Tao Gyoun Rho, 169 AD2d 184, 188-189 [1991]; Pizzi v Muccia, 127 AD2d at 340). This standard has devolved into a quagmire for trial courts exercising oversight of disclosure; the standard has encouraged the withholding of information and the filing of motions by both sides, and requires determinations of what information would reveal the identity of each particular expert on a case-by-case basis. The Second Department abandoned that standard as unworkable in 2002, based on what it considered an incorrect application of the statutory language, as well as "the simplification and proliferation of computer technology" that essentially permitted anyone possessing a physician's full credentials to identify that person (Thomas v Alleyne, 302 AD2d at 39). We acknowledge that, in 2018, such technology has not only exceeded what it was in 2002, but it has expanded exponentially since this Department created its rule in 1987, just two years after the statute's enactment (see Pizzi v Muccia, 127 AD2d at 340). Contrary to plaintiff's argument that "the law should recognize this technological change by further limiting defendants' right to the disclosure of background information relating to a medical malpractice plaintiff's expert's qualifications[,] . . . this technological change points to the futility of attempting to conceal the identity of expert witnesses in medical malpractice cases" (Thomas v Alleyne, 302 AD2d at 43). Because of advancements in technology, in most cases our current standard would permit a party to withhold vast amounts of information and reveal so little about its expert that the opposing party would be unable to adequately prepare for trial. Essentially, our standard has permitted the statutory exception to swallow the rule.
Pursuant to the statute, the only relevant information concerning an expert witness in a medical malpractice action that parties may omit from disclosure, without a protective order, is the expert's name (see CPLR 3101 [d] [1] [i]). Any change to that exception must come from the Legislature. We note that in federal courts, guided by the Federal Rules of Civil Procedure, parties may obtain liberal disclosure regarding experts, including taking depositions of experts (see Fed Rules Civ Pro rule 26 [a] [2]; [b] [4]). Patterned on either the current federal rules, or a previous version that allowed broad expert discovery through interrogatories, "[a]ll states except New York freely permit discovery of expert witnesses, including the expert's identity" (Richard S. Basuk, Note, Expert Witness Discovery for Medical Malpractice Cases in the Courts of New York: Is it Time to Take Off the Blindfolds?, 76 NYU L Rev 1527, 1528 n 6 [2001] [citing statutes from each state and the District of Columbia]; see Thomas v Alleyne, 302 AD2d at 44). Inasmuch as this state's expert disclosure statute is already the most restrictive in the nation, there is no reason for this Court to continue to interpret the statute in a way that permits parties to severely limit the amount of information they provide regarding their expert witnesses.
Like the Second Department held in Thomas v Alleyne (supra), we conclude that our current standard is not only impractical, but contrary to the statutory language and "the salutary policy of encouraging full pretrial disclosure so as to advance the fundamental purpose of litigation, which is to ascertain the truth" (id. at 44). Accordingly, we adopt that Court's rule that parties in medical malpractice cases "will ordinarily be entitled to full disclosure of the qualifications of [an opponent's] expert, [except for the expert's name,] notwithstanding that such disclosure may permit such expert's identification," but a party may obtain a protective order under CPLR 3103 (a) by making a factual showing that there exists a reasonable probability, "under the special circumstances of a particular case, that a prospective expert medical witness would be subjected to intimidation or threats if his or her name were revealed before trial" (id. at 45-46). Stated otherwise, parties
"in medical malpractice actions are presumptively entitled to a statement of the [opponents'] expert's qualifications in 'reasonable detail' (CPLR 3101 [d] [1] [i]), as the statute commands, and [parties opposing disclosure] in such cases may avoid compliance with this obligation only upon production of proof sufficient to sustain findings (a) that there is a reasonable probability that such compliance would lead to the disclosure of the actual identity of their expert or experts, and (b) that there is a reasonable probability that such disclosure would cause such expert or experts to be subjected to 'unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice' (CPLR 3103 [a])" (Thomas v Alleyne, 302 AD2d at 37-38).[FN1]
Because we are announcing a new rule, it would be unfair to deny plaintiff relief when she, in fact, met her burden under the former standard and had no reason to know that more would be required of her. Hence, we remit to provide plaintiff an opportunity to meet her burden under our new standard for preventing disclosure of expert witness qualifications in medical malpractice actions.
Egan Jr., Devine, Mulvey and Rumsey, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as required plaintiff to disclose additional qualifications of her experts; matter remitted to the Supreme Court for further proceedings on that aspect of the motions; and, as so modified, affirmed.



Footnotes

Footnote 1: Although in both this case and Thomas v Alleyne (supra)the plaintiff was the party seeking to prevent or limit disclosure, we note that the expert disclosure statute and, consequently, our standard apply equally to all parties.