[646 NYS2d 149]

In the Matter of the Dissolution of VALIDATION REVIEW ASSOCI-ATES, INC. MORDECAI BERKUN, Respondent; DAVID SCHIMEL, Appellant.

Second Department, July 29, 1996

APPEARANCES OF COUNSEL

*Levitt & Cohen,* Williston Park *(Steven L. Levitt* of counsel), for appellant.

*Gerry E. Feinberg,* White Plains *(Pamela A. Phillips* on the brief), for respondent.

## OPINION OF THE COURT

RITTER, J.

We are asked to determine the validity of a provision within a shareholders agreement to waive the statutory and common-law right to petition for a judicial dissolution of a closely held corporation. On the facts presented, we find such a provision to be unenforceable as against public policy.

In 1989 the petitioner, Mordecai Berkun, a licensed physician, and the appellant, David Schimel, a nonpracticing attorney, formed Validation Review Associates, Inc. (hereinafter VRA). VRA was formed to provide consulting services to health-care providers concerning the accuracy and appropriateness of classifications relating to medical procedures and services and, in turn, the claims they submitted to insurance companies. In general, Schimel solicited new accounts and handled the contracts and billing. Berkun provided the expert advice. Initially, Berkun owned two thirds of the voting stock and Schimel one third, with Berkun's salary being twice that of Schimel's. Subsequently, due to the issuance of nonvoting stock, Berkun's share of voting stock was reduced to 60.32% and Schimel's increased to 39.68%. The parties executed a shareholders agreement which required 75% of the shares to be voted in favor of a proposition to permit its passage and in which they further agreed: "not to petition, and to use their best efforts to cause the directors of the Corporation not to petition, any court for the judicial winding-up or dissolution of the Corporation whether in the event of an impasse with respect to the operations of the Corporation or otherwise". Further, the agreement called for a four-person Board of Directors, and Schimel and Berkun each were granted the right to designate two members.

In December 1992, Berkun commenced this proceeding seeking dissolution of VRA on the grounds of dissension and

deadlock in its operation *(see,* Business Corporation Law § 1104). Berkun alleged, *inter alia,* that the employees of VRA, who were now divided based on their allegiance to either Berkun or Schimel, were working at cross-purposes or in ignorance of each other. This, he alleged, resulted in loss of revenue to the corporation from both improperly maintained existing accounts and lost opportunities for potential new accounts. Berkun further alleged that Schimel was using his position as president and director of VRA to make unilateral decisions concerning, *inter alia,* the hiring and compensation of employees and increases in his own salary that were either unauthorized by the Board of Directors (which was not functioning) and/or in violation of the shareholders agreement. Schimel moved to dismiss the petition, alleging, *inter alia,* that it was barred by the anti-judicial dissolution provision of the shareholders agreement. Berkun cross-moved to dismiss Schimel's counterclaims. The Supreme Court, holding that the anti-judicial dissolution provision of the shareholders agreement was void as against public policy, denied Schimel's motion to dismiss, and granted those branches of Berkun's cross motion which were to dismiss six of Schimel's counterclaims. We now affirm.

One method by which shareholders of a close corporation may protect their rights and establish their relationship is through a shareholders agreement *(see, Landorf v Glottstein,* 131 Misc 2d 432, *affd* 127 AD2d 1016; 3 White, New York Corporations, Business Corporation Law ¶ 620.01 [13th ed]). A shareholders agreement is a contract and is to be construed pursuant to general contract principles *(see, Lama Holding Co. v Smith Barney,* 215 AD2d 314; *Schmidt v Magnetic Head Corp.,* 97 AD2d 151; 3 White, New York Corporations, Business Corporation Law ¶ 620.01 [2] [13th ed]). In general, parties may incorporate into their contracts any provisions that are not illegal, unconscionable, restricted by legislation, or violative of public policy *(see,* 21 NY Jur 2d, Contracts, §§ 137, 141). "An agreement is not necessarily against public policy because it waives a constitutional or statutory right. Generally, parties may agree to waive statutory rights unless a question of public policy is involved" (21 NY Jur 2d, Contracts, § 146, at 554; *see also, Matter of Brooklyn Union Gas Co. v City of New York,* 83 AD2d 921, *affd* 56 NY2d 881). Public policy may be found, *inter alia,* "by the expression of the will of the legislature contained in statutory enactments" (21 NY Jur 2d, Contracts, § 144, at 552). Here, the anti-judicial dissolution provision of

the parties' shareholders agreement violates public policy as expressed by the Legislature and under the common law.

State statutory law, as it has expanded over the years, permits the incorporation of a broad variety of relationships, including, *inter alia,* relationships that might have otherwise taken the form of a partnership *(see, Ripin v United States,* 205 NY 442; *Shubin v Surchin,* 27 AD2d 452; 3 White, New York Corporations, Business Corporation Law ¶ 620.01 [13th ed]). These "incorporated partnerships" *(Ripin v United States, supra)* sometimes take the form, as here, of a close corporation. With the corporate form, however, comes the potential for deadlock and the oppression of a minority shareholder *(see, Ripin v United States, supra;* O'Neal, "Squeeze-Outs" of Minority Shareholders § 9.05 [1975]). Accordingly, the Legislature has enacted various statutory provisions for the protection of such shareholders *(see, Matter of Blake v Blake Agency,* 107 AD2d 139, *lv denied* 65 NY2d 609; 4 White, New York Corporations, Business Corporation Law §§ 1102-1118 [13th ed]; 1979 NY Legis Ann, at 143-144; Davidian, *Corporate Dissolution in New York: Liberalizing the Rights of Minority Shareholders,* 56 St John's L Rev 24 [1981-1982]). These provisions include, *inter alia,* that the holder or holders of 50% of the shares of a corporation (33% if the certificate of incorporation contains a supermajority provision) may petition for judicial dissolution of a corporation on the grounds that the corporation is deadlocked or divided by dissension to the detriment of the shareholders *(see,* Business Corporation Law § 1104), and that the holder or holders of 20% of the shares of a closely held corporation may petition for judicial dissolution of a corporation on the grounds that the directors are guilty of illegal, fraudulent, or oppressive acts towards the complaining shareholders, or that the assets of the corporation are being looted, wasted, or diverted to noncorporate purposes *(see,* Business Corporation Law § 1104-a). Significantly, the protections afforded by Business Corporation Law §§ 1104 and 1104-a, unlike other provisions concerning both judicial *(see, e.g.,* Business Corporation Law § 1103) and nonjudicial dissolution of a corporation *(see, e.g.,* Business Corporation Law § 1002), cannot be abrogated by unanimous voting requirements in a certificate of incorporation *(see,* 4 White, New York Corporations, Business Corporation Law §§ 1104-1104-a [13th ed]). In addition to such statutory protections, a minority shareholder, in egregious circumstances, has a common-law right to petition the courts for the dissolution of a corporation on the grounds

that the officers or directors have breached their fiduciary duties to the shareholders *(see, Leibert v Clapp,* 13 NY2d 313; *Matter of Sternberg [Osman],* 181 AD2d 897; *Matter of Dubonnet Scarfs [Arkwright Mfg.],* 105 AD2d 339; *Lewis v Jones,* 107 AD2d 931).

Here, if effect is given to the supermajority provision of the parties' shareholders agreement *(see,* 4 White, New York Corporations, Business Corporation Law ¶ 1002.05 [13th ed]), neither Berkun nor Schimel alone may effect a voluntary dissolution of VRA *(see,* Business Corporation Law §§ 1001-1002). Thus, both are, in effect, relegated to the status of a minority shareholder. Consequently, the effect of the anti-judicial dissolution provision at issue, which is absolute on its face, is to vitiate the parties' statutory right to seek a judicial dissolution of VRA regardless of whether, *inter alia,* the corporation is paralyzed by deadlock or dissension to the detriment of its shareholders, or one or both of the parties are guilty of illegal, fraudulent, or oppressive conduct toward the other. Such a provision violates the public policy for the protection of shareholders as expressed by the Legislature and under the common law *(cf., Matter of Sutton v Sutton,* 84 NY2d 37, 43). Indeed, such public policy is especially compelling here, where the parties, as shareholders in a close corporation, have a relationship akin to partners and owe each other a "high degree of fidelity and good faith" *(Matter of Ronan Paint Corp.,* 98 AD2d 413, 421; *see also, Greer v Greer,* 124 AD2d 707; *cf.,* Partnership Law § 62 [2]).

We are not unmindful of the often qualitatively different expectations and interests possessed by a shareholder of a close corporation as opposed to the typical shareholder of a publicly held corporation *(see, Matter of Kemp & Beatley,* 64 NY2d 63; O'Neal, Close Corporations § 1.07, at 21-22 [2d ed]; 5th Interim Report of Joint Legislative Comm to Study Revision of Corporation Laws, 1961 NY Legis Doc No. 12, at 75) or the fact that dissolution is often not the remedy most suitable to a shareholder in a close corporation *(see,* 3 White, New York Corporations, Business Corporation Law ¶ 620.01 [3] [13th ed]). Indeed, a shareholder of a close corporation may, as here, look to the salary and benefits provided by the corporation as the principal return on his or her investment, and his or her shares of stock may not be readily salable and/or difficult to value *(see, Matter of Kemp & Beatley, supra,* at 72). However, while there is clearly no absolute prohibition against the parties entering into some form of agreement as to how the dissolution of a

corporation might be effected, e.g., through buy-out provisions or an arbitration agreement *(see,* 4 White, New York Corporations, Business Corporation Law ¶ 1104.05 [1]-[5] [13th ed]), such a goal cannot be accomplished, as here, by an absolute prohibition against judicial dissolution of a corporation under any circumstances. Further, the anti-judicial dissolution provision at issue cannot be saved by construing it to compel a voluntary or negotiated dissolution of VRA. Such a construction would entail an impermissible judicial rewriting of the parties' contract *(see, Schmidt v Magnetic Head Corp.,* 97 AD2d 151, *supra).*

In sum, the anti-judicial dissolution provision of the shareholders agreement is unenforceable as against public policy. Whether Berkun may be held liable for damages for his breach of the shareholders agreement is an issue that has been raised in a related action between the parties.

The Supreme Court did not improvidently exercise its discretion in dismissing the first six counterclaims of Schimel's answer. The causes of action asserted therein have already been raised by Schimel in the related action between the parties *(see,* CPLR 3211 [a] [4]).

We have considered the parties' remaining contentions and find them to be without merit.

ROSENBLATT, J. P., HART and KRAUSMAN, JJ., concur.

Ordered that the order is affirmed, with costs.