Mercado v Schwartz (2022 NY Slip Op 04962)

Mercado v Schwartz

2022 NY Slip Op 04962

Decided on August 17, 2022

Appellate Division, Second Department

Maltese, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on August 17, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
COLLEEN D. DUFFY
JOSEPH J. MALTESE
LARA J. GENOVESI, JJ.

2019-01617
 (Index No. 64748/14)

[*1]Tiffany Mercado, et al., respondents, 
v
Benjamin M. Schwartz, etc., et al., appellants, et al., defendant.

APPEAL by the defendants Benjamin M. Schwartz, M.D., and Island Gynecologic Oncology, PLLC, in an action, inter alia, to recover damages for medical malpractice, etc., from an order of the Supreme Court (Sanford Neil Berland, J.), dated January 10, 2019, and entered in Suffolk County. The order, insofar as appealed from, granted that branch of the plaintiffs' motion which was for a declaration that a provision of a document entitled "Agreement as to Resolution of Concerns," providing that each party had the right to depose the other parties' expert witnesses at least 120 days before trial, is void and unenforceable, and denied that branch of the cross motion of the defendants Benjamin M. Schwartz, M.D., and Island Gynecologic Oncology, PLLC, which was for a declaration that the subject provision is valid and enforceable.

Dorf & Nelson LLP, Rye, NY (Anna Schwartz, Katherine W. Dandy, and John Lyddane of counsel), for appellants.
James F. Scaffidi, New York, NY, for respondents.

MALTESE, J.

OPINION & ORDER
I. Introduction
The issue on this appeal is whether the defendants Benjamin M. Schwartz, M.D., and Island Gynecologic Oncology, PLLC (hereinafter together the defendants), may enforce a provision in an agreement that the defendant physician's receptionist asked the injured plaintiff to sign among other routine medical releases prior to undergoing surgery. Pursuant to this provision, if a patient commenced a medical malpractice action against the defendant physician, each party's counsel would have the right to depose the other parties' expert witness(es) at least 120 days before trial. We hold that this provision is unenforceable as against public policy and, in any event, the defendants waived the right to enforce the provision. Furthermore, the entire agreement is unenforceable because the Supreme Court found certain other provisions to be unenforceable, the defendants do not challenge the court's holding regarding those provisions on appeal, and those provisions are not severable from the remainder of the agreement, including the provision at issue on appeal. Therefore, we affirm the order insofar as appealed from.
II. Relevant Facts and Procedural History
In 2012, the plaintiff Tiffany Mercado (hereinafter the patient) began experiencing swelling, rashes, foot discoloration, night sweats, and low back pain. She believed that the symptoms were a side effect of the Essure contraceptive device. The Essure device is a metal coil that is placed into each of the fallopian tubes and causes an inflammatory reaction resulting in the closure of the fallopian tubes (see Aronov v Kanarek, 166 AD3d 574). In November 2013, the patient consulted with the defendant Benjamin M. Schwartz, M.D., regarding the removal of the [*2]Essure devices. Dr. Schwartz informed her that a hysterectomy would be necessary to remove the devices.
The patient decided to undergo a hysterectomy in order to remove the devices. While the patient was in the waiting area of Dr. Schwartz's office, she was provided with "a bunch" of papers that she was required to complete before undergoing surgery, including a consent form and an "Agreement as to Resolution of Concerns" (hereinafter the Agreement), which is at issue on this appeal. The Agreement apparently was provided to the patient for signature without any discussion or explanation or any consultation with an attorney. The record discloses that the patient signed the Agreement dated November 14, 2013.
The Agreement provided:
"I understand that I am entering into a contractual relationship with the Physician for professional care. I further understand that meritless and frivolous claims for medical malpractice have an adverse effect upon the cost and availability of medical care to patients and may result in irreparable harm to a medical provider. As additional consideration for professional care provided to me by the Physician, I, the Patient/Guardian, agree not to initiate or advance, directly or indirectly, any meritless or frivolous claims of medical malpractice against the Physician.
"Should I initiate or pursue a meritorious medical malpractice claim against Physician, I agree to use as expert witnesses (with respect to issues concerning the standard care), only physicians who are board certified by the American Board of Medical Specialities in Obstetrics and Gynecology with subspecialty certification in Gynecologic Oncology. Further, I agree that these physicians retained by me or on my behalf to be expert witnesses will be in good standing of the American Board of Obstetrics and Gynecology.
"I agree the expert(s) will be obligated to adhere to the guidelines or code of conduct defined by the American Board of Obstetrics and Gynecology and that the expert(s) will be obligated to fully consent to formal review of conduct by such society and its members.
"I agree to require any attorney I hire and any physician hired by me or on my behalf as an expert witness to agree to these provisions.
"In further consideration, Physician also agrees to exactly the same above-referenced stipulations.
"Each party agrees that his/her counsel shall have the right and be free to depose the other party's expert witness(es) at least 120 days before any schedule[d] trial date.
"Each party agrees that a conclusion by a specialty society affording due process to an expert will be treated as supporting or refuting evidence of a frivolous or meritless claim.
"Patient/Guardian and Physician agree that this Agreement is binding upon them individually and their respective successors, assigns, representatives, personal representatives, spouses and other dependents.
"Physician and Patient/Guardian agree that these provisions apply to any claim for medical malpractice whether based on a theory of contract, negligence, battery or any other theory of recovery.
"Patient/Guardian and Physician acknowledge that monetary damages may not provide an adequate remedy for breach of this Agreement. Such breach may result in irreparable harm to Physician's reputation and business. Patient/Guardian and Physician agree that in the event of a breach to allow specific performance and/or injunctive relief.
"Patient/Guardian acknowledges that he/she has been given ample opportunity to read this agreement and to ask questions about it" (emphasis added).
According to Dr. Schwartz, in addition to the Agreement, patients were asked to complete a patient registration form, an authorization to disclose protected health information, a form regarding information about the patient's other treating physicians, and a form about family history of hereditary cancers. Dr. Schwartz's receptionist provided the forms to his patients. If a patient [*3]alerted the receptionist that she had a question about the Agreement, Dr. Schwartz would then meet with the patient and tell her that he is not a lawyer and cannot give legal advice, but that his lawyer advised that he enter into this agreement with patients. He would advise the patient to speak to a lawyer, and tell her that he would make her an emergency appointment to return to his office. If a patient declined to sign the Agreement, he would refer her to another gynecologist, and absent a medical emergency, he would not treat the patient.
On January 9, 2014, Dr. Schwartz performed a laparoscopically assisted vaginal hysterectomy, bilateral salpingectomy, and ovarian cystectomy on the patient. On June 19, 2014, the patient, and her husband, Raul Mercado, suing derivatively, commenced this medical malpractice action against Dr. Schwartz and his medical practice, Island Gynecologic Oncology, PLLC, among others. The plaintiffs alleged that Dr. Schwartz negligently pierced the patient's duodenum during the procedure and then failed to recognize that the duodenum had been pierced.
During the pendency of this action, the parties entered into a preliminary conference stipulation and order dated December 17, 2014, which the Supreme Court so-ordered on February 5, 2015. The preliminary conference stipulation and order provided that "[e]xpert [d]isclosure shall be provided by all parties pursuant to CPLR 3101."
The plaintiffs moved for a declaration that the Agreement is void and unenforceable. The defendants cross-moved for a declaration that the Agreement is valid and enforceable. By order dated January 10, 2019, the Supreme Court granted the plaintiffs' motion and denied the defendants' cross motion, determining that the Agreement was void and unenforceable. The court concluded that the provision of the Agreement which purported to impose certain limits on the qualifications of expert witnesses violates public policy. The court further determined that the provision that "a conclusion by a speciality society affording due process to an expert will be treated as supporting or refuting evidence of a frivolous or meritless claim," was unenforceably vague and ambiguous and violated public policy. Finally, the court concluded that, by entering into the so-ordered preliminary conference stipulation and order, the defendants had waived their right to enforce the provision purporting to grant each party the right to depose the other parties' expert witnesses. The court further determined that the Agreement "contains no severability provision or any other indication that the parties intended separate performance of portions of the form in the event material provisions of the form were found to be unenforceable." On appeal, the defendants only challenge the portion of the order that determined that the provision affording the parties the right to depose expert witnesses was unenforceable and had been waived. We affirm the order insofar as appealed from.
III. Analysis
A. Public Policy
We agree with the plaintiffs' contention that the provision purporting to grant the parties the right to depose the other parties' expert witnesses violates public policy, as expressed in CPLR 3101(d). "In general, parties may incorporate into their contracts any provisions that are not illegal, unconscionable, restricted by legislation, or violative of public policy" (Matter of Validation Review Assoc., 223 AD2d 134, 136, revd on other grounds 91 NY2d 840). Furthermore, "parties may agree to waive statutory rights unless a question of public policy is involved" (id. at 136 [internal quotation marks omitted]). A contractual provision may be deemed unenforceable where "the public policy in favor of freedom of contract is overridden by another weighty and countervailing public policy" (159 MP Corp. v Redbridge Bedford, LLC, 33 NY3d 353, 360). "Public policy may be found, inter alia, by the expression of the will of the legislature contained in statutory enactments" (Matter of Validation Review Assoc., 223 AD2d at 136 [internal quotation marks omitted]).
CPLR 3101(d)(1) provides:
"(i) Upon request, each party shall identify each person whom the party expects to call as an expert witness at trial and shall disclose in reasonable detail the subject matter on which each expert is expected to testify, the substance of the facts and opinions on which each expert is expected to testify, the qualifications of each expert witness and a summary of the grounds for each expert's opinion. However, where a party for good cause shown retains an expert [in] an insufficient period of time before the commencement of trial to give appropriate notice thereof, the party shall not thereupon be precluded from introducing the expert's testimony at the trial solely on grounds of noncompliance with this paragraph. In that instance, upon motion of any party, made before or at trial, or on its own initiative, the court may make whatever order may be just. In an action for medical, dental or podiatric malpractice, a party, [*4]in responding to a request, may omit the names of medical, dental or podiatric experts but shall be required to disclose all other information concerning such experts otherwise required by this paragraph.
"(ii) In an action for medical, dental or podiatric malpractice, any party may, by written offer made to and served upon all other parties and filed with the court, offer to disclose the name of, and to make available for examination upon oral deposition, any person the party making the offer expects to call as an expert witness at trial. Within twenty days of service of the offer, a party shall accept or reject the offer by serving a written reply upon all parties and filing a copy thereof with the court. Failure to serve a reply within twenty days of service of the offer shall be deemed a rejection of the offer. If all parties accept the offer, each party shall be required to produce his or her expert witness for examination upon oral deposition upon receipt of a notice to take oral deposition in accordance with rule thirty-one hundred seven of this chapter. If any party, having made or accepted the offer, fails to make that party's expert available for oral deposition, that party shall be precluded from offering expert testimony at the trial of the action.
"(iii) Further disclosure concerning the expected testimony of any expert may be obtained only by court order upon a showing of special circumstances and subject to restrictions as to scope and provisions concerning fees and expenses as the court may deem appropriate. However, a party, without court order, may take the testimony of a person authorized to practice medicine, dentistry or podiatry who is the party's treating or retained expert, as described in paragraph three of subdivision (a) of this section, in which event any other party shall be entitled to the full disclosure authorized by this article with respect to that expert without court order" (emphasis added).
The language of CPLR 3101(d)(1) reflects the Legislature's intent to limit the requirements for disclosure of the identity of experts in actions for medical, dental, or podiatric malpractice based on a concern that "medical experts might be discouraged from testifying by their colleagues" (Thomas v Alleyne, 302 AD2d 36, 45 [internal quotation marks omitted]; see Wagner v Kingston Hosp., 182 AD2d 616, 617). Here, the provision requiring the plaintiffs to make their expert available for deposition, and by doing so disclose the expert's identity, 120 days before trial clearly obviates the intent of the Legislature to permit plaintiffs in medical malpractice actions to avoid disclosing the names of their experts until trial. Furthermore, CPLR 3101(d)(1)(ii) provides for the deposition of expert witnesses only if all of the parties accept the offer to make an expert witness available. This provision suggests that the Legislature intended that, as the default, expert witnesses would not be deposed and that, in order to depose experts, all parties would have to "opt in."
Requiring experts to be made available for deposition 120 days before trial also directly contradicts the provision in CPLR 3101(d)(1)(i) that gives trial courts the discretion to "make whatever order may be just" in the event that a party retains an expert in an insufficient period of time before the commencement of trial to provide appropriate notice. This statutory provision reflects the important public policy of allowing courts to retain discretion in their role as gatekeeper in determining the admissibility of expert testimony (see generally Daubert v Merrell Dow Pharmaceuticals, Inc., 509 US 579; Clemente v Blumenberg, 183 Misc 2d 923, 932 [Sup Ct, Richmond County]; Frye v United States, 293 F 1013 [DC Cir]). For all of the foregoing reasons, we conclude that, here, the public policy in favor of freedom of contract is overridden by these other important and countervailing public policy interests (see generally 159 MP Corp. v Redbridge Bedford, LLC, 33 NY3d at 360).
We note also that although the defendants describe the provision at issue as being "reciprocal" and therefore balanced, in that it grants the plaintiffs the right to depose the defendants' expert, as well as vice versa, it is unlikely that a defendant physician's expert witness might be pressured by fellow physicians not to testify on behalf of the defendant. Thus, the provision constitutes a greater concession by the plaintiffs than by the defendants, and it benefits the defendants far more than it does the plaintiffs. This imbalance is amplified by the fact that, rather than the provision being part of an agreement that was negotiated at arm's length by sophisticated parties represented by counsel, here, the patient was handed the Agreement with no explanation or discussion along with several other papers that she was expected to complete in order to undergo surgery (see Ash v New York Univ. Dental Ctr., 164 AD2d 366, 367-368; cf. 159 MP Corp. v Redbridge Bedford, LLC, 33 NY3d at 356).
The defendants contend that the provision at issue is analogous to an arbitration [*5]agreement, which they contend would be enforceable. This contention is without merit because the provision at issue is not analogous to an arbitration agreement. The United States Supreme Court has held that the Federal Arbitration Act has displaced state laws prohibiting the arbitration of particular types of claims (see Marmet Health Care Center, Inc. v Brown, 565 US 530, 532). Moreover, New York state law sets forth procedures in the event parties agree to arbitrate as an alternative method of dispute resolution (see CPLR art 75). In contrast, here, the defendants have not identified any federal law that would preempt CPLR 3101(d) or any New York state law that would create an exception to its applicability here. Moreover, as the plaintiffs contend, arbitration agreements determine the forum in which a dispute will be resolved, while the provision at issue here dictates the manner in which discovery will occur in court. As discussed, this provision also prevents the court from performing its role as a gatekeeper in determining the admissibility of expert testimony.
"Virtually every jurisdiction in the United States except New York, conforming to the Federal Rules of Civil Procedure . . . , allows the discovery of the names of adverse expert witnesses in medical malpractice cases through depositions or interrogatories; many states go so far as to permit depositions of such experts" (Thomas v Alleyne, 302 AD2d at 44). Thus, while other jurisdictions may find agreements similar to the Agreement to be enforceable, we hold that the provision at issue violates public policy as expressed by our Legislature in CPLR 3101(d).
B. Waiver
The Supreme Court also properly determined that the defendants waived the provision of the Agreement which provided that each party had the right to depose the other parties' expert witnesses, when they entered into the preliminary conference stipulation and order, which provides that expert disclosure shall be provided by the parties pursuant to CPLR 3101. Contrary to the defendants' contention, the provision at issue directly contradicts CPLR 3101(d)(1), which permits parties in medical malpractice actions to omit the names of expert witnesses from disclosure and provides for expert witness depositions only in the event that a party makes a written offer to make its expert available for depositions and serves the offer upon all other parties and files it with the court, and all other parties accept the offer in writing (see id.). Here, no offer was made by any party to exchange the names of any expert.
Furthermore, contrary to the defendants' contention, the record reflects that the waiver was voluntary and intentional. "A valid waiver requires no more than the voluntary and intentional abandonment of a known right which, but for the waiver would have been enforceable" (Golfo v Kycia Assoc., Inc., 45 AD3d 531, 532 [internal quotation marks omitted]; see Fundamental Portfolio Advisors, Inc. v Tocqueville Asset Mgt., L.P., 7 NY3d 96, 104). Thus, even assuming the provision at issue would otherwise be enforceable, the defendants waived their right to enforce it (see Fundamental Portfolio Advisors, Inc. v Tocqueville Asset Mgt., L.P., 7 NY3d at 104-105; cf. Nassau Trust Co. v Montrose Concrete Prods. Corp., 56 NY2d 175; Golfo v Kycia Assoc., Inc., 45 AD3d 531).
We note the inconsistency in the defendants' contentions. They contend that the preliminary conference stipulation and order, which was entered into by their counsel in the context of litigation at a preliminary conference and so-ordered by the Supreme Court, was not intentional. Yet they seek to enforce an agreement that was provided to the patient by Dr. Schwartz's receptionist with no explanation or discussion from Dr. Schwartz or anyone else, along with numerous papers related to her medical history and upcoming surgery, while she was unrepresented and before she ever contemplated litigation.
C. Severability
Finally, we conclude that the provision at issue on appeal is also unenforceable because the other provisions that the Supreme Court found to be unenforceable are not severable from the Agreement. Thus, the entire Agreement is unenforceable. The Agreement contains no severability clause, its main objective is to restrict the rights that the patient would ordinarily have pursuant to case law and the CPLR in prosecuting her medical malpractice claim, and the circumstances surrounding the parties at the time that the patient signed the Agreement do not support a conclusion that any provision therein is severable therefrom (see Lanza v Carbone, 130 AD3d 689, 692-693; see also Georgia Props., Inc. v Dalsimer, 39 AD3d 332, 334).
IV. Conclusion
The provision at issue on appeal, which purports to grant the parties the right to depose the other parties' expert witnesses 120 days before trial, is unenforceable. The provision violates New York public policy, the defendants waived the right to enforce it, and it is not severable from other unenforceable provisions contained in the Agreement.
The parties' remaining contentions are without merit.
Accordingly, the order, inter alia, granting that branch of the plaintiffs' motion which was for a declaration that the provision of the Agreement providing that each party had the right to depose the other parties' expert witnesses at least 120 days before trial, is void and unenforceable, is affirmed insofar as appealed from.
DILLON, J.P., DUFFY and GENOVESI, JJ., concur.
ORDERED that the order is affirmed insofar as appealed from, with costs.
ENTER:
Maria T. Fasulo
Clerk of the Court